# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jeanne Peterson-Price,

        Plaintiff,

    v.

U.S. Bank National Association, as
trustee for Securitized Asset-Backed
Receivables (SABR) 2006-NC2,
Securitized Asset-Backed Receivables
(SABR) 2006-NC2, Trimark Funding,
Inc., and Wells Fargo Bank, N.A., d/b/a
America's Servicing Company, a
Minnesota Corporation,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-495 ADM/JSM

_____

Carl Christensen, Esq., Christensen Law Office PLLC, Minneapolis, MN, on behalf of Plaintiff.

Gregory M. Erickson, Esq., and Tona T. Dove, Esq., Mohrman & Kaardal, PA, Minneapolis,
MN, on behalf of Defendants U.S. Bank National Association as trustee and Wells Fargo Bank,
N.A., d/b/a/ America's Servicing Company.

_____

## I. INTRODUCTION

On February 11, 2010, the undersigned United States District Judge heard oral argument

on Defendants U.S. Bank National Association as trustee for Securitized Asset-Backed

Receivables (SABR) 2006-NC2, Securitized Asset-Backed Receivables (SABR) 2006-NC2

("U.S. Bank") and Wells Fargo Bank, N.A., d/b/a/ America's Servicing Company's ("Wells

Fargo") (collectively "the Banks") Motion for Summary Judgment on Count I and Motion to

Dismiss Counts II through V [Docket No. 33], and on Plaintiff Jeanne Peterson-Price's

("Plaintiff") Motion for Summary Judgment on Count I [Docket No. 38].  The Amended

Complaint [Docket No. 31] alleges a claim of rescission for violations of the Truth in Lending

Act ("TILA"), 15 U.S.C. §§ 1601-1667f, and its implementing rules, Regulation Z, 12 C.F.R. § 226. Plaintiff also asserts claims for (1) a declaratory judgment that the foreclosure on Peterson-Price's home is null and void due to violations of Minnesota's foreclosure by advertisement statute; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) violations of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Minn. Stat. §§ 325F.68-70; and (5) violations of the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. §§ 325D.43-48. For the reasons set forth below, the Banks' Motion is granted in part and denied in part and Plaintiff's Motion is denied.

## II. BACKGROUND

Plaintiff purchased a residence in Minneapolis in 1987. Am. Compl. ¶ 7. On November 18, 2005, she refinanced and entered into a new mortgage loan with a principal balance of $249,000. Id. ¶¶ 12-13. Defendant Trimark Funding, Inc. ("Trimark")[1] originated the mortgage loan. Id. ¶ 7. The mortgage loan is a 2/28 adjustable rate mortgage, or "ARM," which means it is a 30 year loan with an initial, fixed interest rate for the first two years and an adjustable interest rate for the remaining 28 years. Id. ¶ 14. The fixed interest rate for the first two years was 7.990%, and the adjustable rate for the remaining 28 years changed every six months based on the current LIBOR index rate plus 5.95%. Id. ¶ 16. The mortgage loan is amortized on a 40 year schedule, resulting in a balloon payment of $165,493.08 at the end of 30 years. Id. ¶ 14. The following seven mortgage documents were executed in connection with the closing on November 22, 2005: Promissory Note; Mortgage; Adjustable Rate Rider; Adjustable Rate Rider

---

[1] Trimark has ceased doing business and has not defended Plaintiff's summary judgment motion. See Jan. 12, 2010 Letter [Docket No. 49].

Addendum; Prepayment Rider; 40-Year Libor 6-Month ARM with Two Year Rate Lock Adjustable Rate Mortgage Loan Disclosure; and Balloon Disclosure. Christensen Aff. [Docket No. 42], Exs. A-G; Erickson Aff. [Docket No. 46], Exs. 1-7. In addition, Plaintiff received three statements regarding the annual percentage rate ("APR") and two notices disclosing the right under TILA to rescind the transaction within three days. Christensen Aff., Exs. H-N.

After the mortgage loan was originated, it was purchased by Securitized Asset-Backed Receivables ("SABR") 2006-N2, which was subject to a Pooling and Service Agreement ("PSA"). Am. Compl. ¶ 10; Ex. PSA 1. U.S. Bank is the trustee for SABR and Wells Fargo is the current servicer of the mortgage loan. Id. ¶¶ 8, 11. On October 7, 2008, Trimark executed an Assignment of Mortgage, assigning "all right and interest in the note and obligations therein specified and the debt thereby secured" to U.S. Bank as trustee for SABR. Id. ¶¶ 27-28; Ex. 14 (Assignment of Mortgage). The Assignment of Mortgage was recorded in the Hennepin County Recorder's Office on October 27, 2008. Id., Ex. 14

Plaintiff made her monthly payments on the mortgage loan until February 2008. Id. ¶ 23. On October 24, 2008, Plaintiff received a Notice of Mortgage Foreclosure Sale, scheduling a sheriff's sale of her home on December 10, 2008. Id. ¶ 15, Ex. 15. On October 27, 2008, the Hennepin County Recorder's Office recorded a Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage, representing that Minnesota Electronic Registration Systems, Inc. ("MERS") was the nominee for the lender, Trimark; that the mortgage had been assigned to U.S. Bank as trustee for SABR; and that the law firm of Reiter & Schiller had the authority, pursuant to a power of attorney, to conduct a foreclosure by advertisement. Id., Ex. 16. Acting through her attorney, Plaintiff sent a letter on November 14, 2008, to Trimark, U.S. Bank, Wells

Fargo, and Reiter & Schiller, announcing that she was rescinding the mortgage she entered into with Trimark three years earlier on the basis of alleged violations of TILA and Regulation Z. Id. ¶ 55, Ex. 17. Wells Fargo responded on December 18, 2008, that Plaintiff's demand for rescission had been denied. Id. ¶ 56, Ex. 18. Plaintiff received a new Notice of Mortgage Foreclosure Sale about one month later, informing her that the sheriff's sale would occur on March 11, 2009. Id. ¶ 57, Ex. 19.

Plaintiff filed her original Complaint [Docket No. 1] in this action on March 3, 2009, and, on March 6, caused a lis pendens notice to be recorded in the Hennepin County Recorder's Office. Id. ¶ 58, Ex. 20. U.S. Bank executed a notice of postponement of the sheriff's sale, postponing the sale to May 15, 2009. Id., Ex. 24. The sheriff's sale was conducted on May 15, 2009, and U.S. Bank purchased Plaintiff's home. Id., Ex. 25. Plaintiff filed her Amended Complaint on November 11, 2009, and the current motions followed.

### III. DISCUSSION

#### A. Summary Judgment

Both Plaintiff and the Banks move for summary judgment on Plaintiff's claim for rescission under TILA and Regulation Z (Count I). Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most

favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The

nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the

record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of

Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### 1.        Assignee Liability

As a threshold matter, the Banks argue that they are not proper party defendants on the

rescission claim because U.S. Bank, as the trustee for SABR, and Wells Fargo, as the loan

servicer, are not "creditors" of Plaintiff as that term is defined by 15 U.S.C. § 1602(f) and 12

C.F.R. § 226.2(a)(17), and they cannot be held liable as "assignees" for statutory damages for the

alleged underlying TILA violations.  Plaintiff concedes that Wells Fargo is not liable under

TILA for rescission and clarifies that Wells Fargo is named in the TILA claim merely because it,

as the current servicer, is a necessary party.   Bills v. BNC Mortgage, Inc. is precedent that

current servicers are properly viewed as necessary parties for purposes of a rescission action

under TILA.  502 F. Supp. 2d 773, 775 (N.D. Ill. 2007).  Accordingly, only U.S. Bank's status is

in dispute.

U.S. Bank, as an assignee of Trimark, argues it can be held liable on a rescission claim

for the alleged TILA violations by Trimark only if the violations are apparent on the face of the

disclosures.  In support of this argument, 15 U.S.C. § 1641(a) is cited.  This provision reads:

"[e]xcept as otherwise specifically provided in this subchapter, any civil action for a violation of

this subchapter . . . which may be brought against a creditor may be maintained against any

assignee of such creditor only if the violation . . . is apparent on the face of the disclosure

statement."  However, Plaintiff's claim is not a civil action under § 1641(a) for violation of the

disclosure requirements; instead, it is a claim for rescission under 15 U.S.C. § 1635. "An action for rescission under § 1635 is a distinct cause of action from a civil action for a violation of the TILA's disclosure requirements, and assignees are liable for rescission even if a disclosure violation is not apparent on the face." Parker v. Potter, 232 F. App'x 861, 865 (11th Cir. 2007) (quotation omitted); accord Miranda v. Universal Fin. Group, Inc., 459 F. Supp. 2d 760, 764-65, n.3 (N.D. Ill. 2006). Indeed, 15 U.S.C. § 1641(c) confirms that "[a]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction against any assignee of the obligation." The Court concludes, therefore, that U.S. Bank's liability as an assignee on the rescission claim does not require a determination that the violations were apparent on the face of the Trimark disclosures.[2]

The Banks challenge Plaintiff's TILA claim against U.S. Bank seeking damages for the failure to honor her November 14, 2008 rescission letter. As to this aspect of her TILA claim, the Banks contend that U.S. Bank, as an assignee, cannot be held liable for statutory damages for denying her rescission demand based on underlying TILA violations in Trimark's disclosures unless those underlying violations were facially apparent. There is disagreement among the courts on this issue. Compare Bills, 502 F. Supp. 2d at 776-77 (holding that absent an underlying facial violation, an assignee cannot be held liable for statutory damages for failing to comply with a notice of rescission); with Garcia v. HSBC Bank USA, N.A., No. 09-CV-1369, 2009 WL 4730961, at *4-5 (N.D. Ill. Dec. 7, 2009) (indicating that an assignee may be held

---

[2] The argument that 15 U.S.C. § 1641(e) further supports the position that assignee liability for rescission requires a TILA violation apparent on the face of the disclosure statement fails for the same reasons. See Fairbanks Capital Corp. v. Jenkins, 225 F. Supp. 2d 910, 917 (N.D. Ill. 2002); Wilbourn v. Advantage Fin. Partners, LLC, No. 09-CV-2068, 2010 WL 1194950, at *6 n.11 (N.D. Ill. Mar. 22, 2010).

liable for statutory damages and attorneys' fees for failing to honor a rescission even if the underlying violation by the original lender is not facially apparent). As discussed in the following sections, fact issues remain on whether Trimark's disclosures violated TILA. If the resolution of those fact issues results in a determination that Trimark's disclosures did not violate TILA, the debate over whether to require the violations to be facially apparent is moot. In addition, even if the Banks are correct that facial apparentness is required of the alleged TILA violations underlying Plaintiff's damages claim for wrongful denial of her rescission, whether the TILA violations (if they are ultimately proven) are facially apparent also is a question of fact. See White v. Homefield Fin., Inc., 545 F. Supp. 2d 1159, 1167-68 (W.D. Wash. 2008) (concluding that whether a violation was apparent on the face of a notice of rescission, meaning that a reasonable person could spot the violation on the face of the notice or other assigned documents, was a question of fact when the notice given to the borrower incorrectly stated the date of the transaction and did not specify the date the rescission period expired and the notice in the assignee's loan file had "handwritten alterations" to the date of the transaction). Accordingly, summary judgment is premature on Plaintiff's statutory damages claim against U.S. Bank for the denial of her rescission.

### 2. APR Statements

TILA requires creditors to disclose certain credit terms to consumers, including the APR, which is designated a material disclosure. 15 U.S.C. §§ 1638(a)(8), 1602(u); 12 C.F.R. § 226.18(e). If a creditor violates TILA by failing to comply with disclosure requirements, the time in which a consumer is entitled to rescind the transaction is extended from three days to three years. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23. Because the purpose of TILA is "to assure

a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit," creditors must disclose information such as the APR "clearly and conspicuously." 15 U.S.C. §§ 1601(a), 1632(a). Determining whether a creditor has violated TILA's clear and conspicuous disclosure requirement involves the application of an objective standard "regardless of whether the borrower is a trained attorney or simply an individual who had a sudden need for additional funds." Rand Corp. v. Yer Song Moua, 559 F.3d 842, 845-46 (8th Cir. 2009) (quotation omitted). This objective standard asks whether an average consumer would be confused by the disclosures that were made. See id. at 847; Palmer v. Champion Mortgage, 465 F.3d 24, 28-29 (1st Cir. 2006).

Plaintiff claims that she is entitled to rescind her mortgage because Trimark provided her with three statements that contradicted each other regarding the APR on the loan—a statement dated November 15, 2005, disclosing an 8.487% fixed APR; a statement dated November 18, 2005, disclosing a 10.492% variable rate; and a statement dated November 21, 2005, disclosing an 8.469% fixed rate. Christensen Aff., Exs. H-K. Plaintiff contends simultaneously providing a consumer with multiple disclosures that conflict with each other in setting the APR on the loan fails to meet the clear and conspicuous standard. A failure to meet the disclosure requirement would give rise to the extended three-year rescission period. See Pulphus v. Sullivan, No. 02 C 5794, 2003 WL 1964333, at *15 (N.D. Ill. Apr. 28, 2003) ("[The plaintiff's] allegation that she received two, contradictory TILA disclosures is equivalent to alleging that she received none, a paradigmatic violation of TILA.").

There is no dispute that at the time of closing, Plaintiff received both the November 18

statement disclosing a 10.492% variable rate and the November 21 statement disclosing a 8.469% fixed rate.[3]  The Banks contend, however, that these inconsistent disclosures do not violate TILA because other documents provided to Plaintiff at closing—specifically, the seven mortgage documents—made absolutely clear that Plaintiff was entering into an adjustable rate mortgage, that the November 18 statement obviously related to the APR for the 28 year period of the mortgage loan when the interest rate was adjustable, and that the November 21 statement obviously related to the APR for the two year period when the interest rate was fixed.  In addition, the Banks stress that Plaintiff admitted in her deposition that (1) she was given the opportunity to carefully review all of the documents provided to her at closing and ask questions of the lender and (2) had she read the documents more closely, she would have understood the adjustable rate aspect of the mortgage loan.

The Banks argue that the Court can decide, on summary judgment, that the conflicting statements did not violate TILA's requirement that the APR be disclosed clearly and conspicuously because other documents should have resolved any potential confusion created by the conflicting statements.  In taking this position, the Banks rely on Roberts v. Fleet Bank (R.I.), 342 F.3d 260 (3d Cir. 2003).  In Roberts, consideration of materials other than the disclosure notice itself was found to be appropriate in determining whether a creditor disclosed required information clearly and conspicuously.  Id. at 266-68.  However, the court did not hold that it is appropriate to resort to other material to conclude as a matter of law that the discrepancy or inadequacy in the disclosure did not mislead the consumer.  To the contrary, the Roberts court

---

[3] The November 15 APR statements may have been provided to Plaintiff some days prior to the closing, but there is no dispute that the other two were simultaneously provided at closing.

concluded that after appropriately considering all of the materials, a question of fact existed as to whether the creditor failed to disclose required information clearly and conspicuously. Id. at 267-69. The same is true in this case. The Banks' argument that other documents given to Plaintiff at the closing clarify any uncertainty caused by the two seemingly inconsistent APR statements provided at the closing is not appropriately resolved on summary judgment.

Similarly, Plaintiff's position that the Court can decide on summary judgment that the inconsistent APR statements violated the clear and conspicuous requirement also is untenable. In support of her position, Plaintiff relies heavily on Pulphus, a decision by a district court in the Seventh Circuit. The Seventh Circuit's formulation of the objective, clear and conspicuous standard requires strict compliance and "does not forgive technical errors." Handy v. Anchor Mortgage Corp., 464 F.3d 760, 764 (7th Cir. 2006). The Seventh Circuit explicitly chose to depart from the law in other circuits, see Hamm v. Ameriquest Mortgage Co., 506 F.3d 525, 529 (7th Cir. 2007), which holds that the clear and conspicuous standard does not require perfect compliance. See Santos-Rodriguez v. Doral Mortgage Corp., 485 F.3d 12, 16 (1st Cir. 2007) ("Most Courts have concluded that TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice."); Veale v. Citibank, 85 F.3d 577, 581 (11th Cir. 1996) ("TILA does not require perfect notice; rather it requires a clear and conspicuous notice . . . ."); Smith v. Chapman, 614 F.2d 968, 972 (5th Cir. 1980) ("Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in [TILA], there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation."). At least one court within the Eighth Circuit has followed the less rigid formulation, specifically relying on the First Circuit's decision in Santos-Rodriquez. See In re Groat, 369 B.R. 413, 417 (8th Cir. B.A.P. 2007).

The Court finds persuasive the rationale for adopting the First Circuit formulation of the

clear and conspicuous standard. As other courts have aptly recognized, such an approach is

consistent with Congressional intent:

> Congress passed the Truth in Lending Act Amendments of 1995 to set "higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations." . . . The current statutory language, as amended in 1995, is aimed at preventing creditors from facing overwhelming and "draconian" liability (rescission) for relatively minor violations. . . . These measures are necessary to prevent a "financial disaster in the mortgage industry[.]" . . . The average consumer test adopted by the First Circuit provides a higher tolerance level for non-confusing technical mistakes in disclosures to consumers, just as Congress intended.

King v. Long Beach Mortgage Co., 672 F. Supp. 2d 238, 249 (D. Mass. 2009). The documents

provided to Plaintiff at the closing (the seemingly inconsistent APR statements and the multiple

mortgage documents), when read together as a whole and in view of the appropriate objective

standard, may or may not cause a jury to find an average consumer would have been confused

regarding the APR applicable to the mortgage loan. Accordingly, whether Trimark violated

TILA by failing to clearly and conspicuously disclose the APR cannot be resolved on summary

judgment. See id. at 249-50 ("Ordinarily, whether TILA disclosures are confusing to the

average consumer is a question of fact for the fact-finder.").

### 3. Notices of Right to Rescind

Plaintiff claims she is entitled to rescission for the additional reason that the two notices

of her right to rescind failed to expressly identify the start date and end date of the three-day

rescission period.[4] A creditor is required to provide a consumer with two copies of a notice of

the right to rescind, clearly and conspicuously disclosing, among other things, the date the

---

[4] The record also includes a copy of the notice of the right to cancel that identifies the transaction date as November 22, 2005, and advises that the right must be exercised by November 26, 2005. The parties dispute whether Plaintiff received the notice with the dates filled in at closing, but that dispute presents a fact issue that cannot be resolved on summary judgment.

rescission period expires.  12 C.F.R. § 226.23(b)(1).  Failing to comply with this disclosure

requirement triggers the three-year rescission period.  See Rand Corp., 559 F.3d at 848.

Plaintiff relies on Semar v. Platte Valley Fed. Sav. & Loan Ass'n, in support of her

argument that omitting the expiration date of the three-day rescission period violates TILA as a

matter of law and triggers the extended three-year rescission period.  See 791 F.2d 699, 703-05

(9th Cir. 1986) (holding that a right to rescind disclosure that omitted the expiration date for the

rescission period violated TILA and triggered the three-year rescission period); accord

Williamson v. Lafferty, 698 F.2d 767, 768-69 (5th Cir. 1983) (holding that Regulation Z "makes

clear that failure to fill in the expiration date of the rescission form is a violation of the TILA").

The Banks respond that other courts have disagreed with the reasoning in Semar in reaching a

contrary decision.[5]  See Melfi v. WMC Mortgage Corp., 568 F.3d 309, 312-13 (1st Cir. 2009)

(declining to follow the Ninth Circuit's decision in Semar, commenting that Semar and its

progeny "may be in tension with later TILA amendments," and holding that omitted dates in a

right to rescind disclosure did not mislead the plaintiff when "the date that [the plaintiff] closed

on the loan can hardly have been unknown to him," "it is easy enough to count three days" from

the date the disclosure was received, and the plaintiff admitted that he received the disclosure on

the date of closing), cert. denied, 130 S. Ct. 1058 (2010); Bonney v. Washington Mut. Bank, 596

F. Supp. 2d 173, 173-74 (D. Mass. 2009) (following the "wealth of authority" in the First Circuit

and the District of Massachusetts, which holds, as a matter of law, that the omission of a

---

[5] The Banks also argue that the rescission notice conformed to the H-8-Rescission Model
Form that has been approved by the Federal Reserve Board, thus shielding them against TILA
attacks.  15 U.S.C. § 1635(h); Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 286
(7th Cir. 1997).  However, the shield provided by § 1635(h) "is applicable only where the model
form is 'properly completed.'"  Aubin v. Res. Funding Co., LLC, 565 F. Supp. 2d 392, 396 (D.
Conn. 2008).  A notice that fails to fill in blanks designated for the date of the transaction and the
date on which the rescission period expires has not been "completed," much less "properly
completed."

transaction date on a right to rescind notice "would not be confusing to an average borrower, whether considered alone or in conjunction with [the omission of the date when the rescission period expired]").  The Eighth Circuit has yet to confront the issue.

On the facts of this case, determining whether an average consumer would be confused by the omission of the transaction date and the date when the rescission period expired cannot be resolved on summary judgment.  In reaching this conclusion, the Court finds persuasive the analyses in <u>Aubin</u> and <u>King</u>.  In <u>Aubin</u>, the court explained that while the rescission notice "refers to 'business days,' it never defines 'business day' or tells the consumer when to begin counting business days or how to count them."  <u>Aubin</u>, 565 F. Supp. 2d at 397.  Citing the definition of "business days" in caselaw, *Blacks Law Dictionary*, and other authorities, the court explained that although the average consumer would believe that business days are confined to Monday through Friday, "it would likely surprise the average person (it certainly surprised this judge) to learn that 'Saturday' is included within TILA's definition of 'business day.'" <u>Id.</u> (citing 12 C.F.R. § 226.2(a)(6)); <u>accord</u> <u>King</u>, 672 F. Supp. 2d at 250.  The <u>Aubin</u> and <u>King</u> courts conceded that this would not necessarily be problematic, except when the start date was a Wednesday and thus the third business day fell on a Saturday; in both of those cases, that precise problem was presented because the start date, the date of the transaction, fell on a Wednesday. <u>Id.</u> at 398; 672 F. Supp. 2d at 250.

Because the date of the transaction was Tuesday, November 22, 2005, the concern in <u>King</u> and <u>Aubin</u> does not initially seem to be posed in the instant case.  But Thursday, November 24, 2005, was Thanksgiving, a holiday which, as an average consumer might expect, does not count as a business day.[6]  Thus, here, as in <u>King</u> and <u>Aubin</u>, the third business day fell on a

---

[6] The provision of Regulation Z that clarifies that the term "business day" includes Saturdays expressly excludes "legal public holidays" such as Thanksgiving.  12 C.F.R. § 226.2(a)(6).

Saturday, which spawns a fact issue as to whether an average consumer would have been confused by the omission of the expiration date of the rescission period.

Additionally, the Banks contend that the omission of the expiration date does not violate TILA because Plaintiff has unequivocally admitted that she understood that she had the right to cancel the mortgage transaction within three days of receiving the closing documents. The test that is applied when determining whether a TILA violation has occurred considers how an average consumer would have viewed the disclosures, not on the specific plaintiff's descriptions of his or her "subjective understandings." See Palmer, 465 F.3d at 28. Furthermore, the deposition testimony arguably shows that Plaintiff understood she had three days from the date of the transaction to rescind, but it does not show that she understood how to calculate those three days or whether to include Saturday, November 26, 2005.

On a related note, the Banks argue that rescission is an equitable remedy and, as such, should not be granted when it would be inequitable to do so. The Banks contend that Plaintiff admitted that she was not confused by the omitted dates and understood that the rescission period expired three days after the transaction; therefore, it would be inequitable to allow her to now rescind on the ground that an average consumer would have been confused. At oral argument, defense counsel claimed that the logic of this argument is reinforced by a lack of caselaw in which a borrower was granted rescission despite subjectively not having been confused or mislead by a TILA disclosure. Despite the intuitive appeal to the Banks' argument, it fails.

In Weeden v. Auto Workers Credit Union, Inc., the Sixth Circuit concluded that a district court erred by instructing the jury that they could return a verdict finding no violation of TILA if they found that the borrowers were aware of their right to cancel, regardless of the notices that may or may not have been provided at closing. 173 F.3d 857, 1999 WL 191430, at *5 (6th Cir.

1999) (per curiam) (unpublished).  The court offered the following legal analysis:

> [T]he defendant insists that because [one of the borrowers] has a real estate license and actually knew during all relevant times how to rescind the transaction even without the official notices, principles of equity should prevent her and her husband from using the technical mandates of the Truth-in-Lending Act to void the entire transaction. Unfortunately for the credit union, the notice required by the Act is statutory, and equitable defenses are not recognized under the statute. However sympathetic we might be to the defendant's plight, in light of the circumstances surrounding the plaintiffs' actual knowledge, we do not have discretion to ignore the clear language of the law. Furthermore, the purpose of statutory recovery in the Truth-in-Lending Act is "to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act."  Watkins v. Simmons and Clark, Inc.,618 F.2d 389, 399 (6th Cir. 1980).  If we were now to create an exception for debtors who have actual knowledge of their rights, we would likely undermine the purpose of the Act.

Id.  Accordingly, the court vacated the judgment of the district court in favor of the lender, entered judgment in favor of the borrower, and remanded the matter to the district court to order rescission of the loan.  Id.

In sum, fact issues regarding whether Trimark failed to clearly and conspicuously disclose the APR and the expiration date of the three-day rescission period preclude summary judgment on Plaintiff's claim for rescission under TILA.

**B.      Motion to Dismiss**

The Banks move to dismiss the remaining state law claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the

sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F.

Supp. at 880.  Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain

a short and plain statement of the claim showing that the pleader is entitled to relief."  A

pleading must contain "enough facts to state a claim to relief that is plausible on its face."  Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw a reasonable inference that the

defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Determining whether a complaint states a plausible claim for relief is "a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense."  Id.

"But where the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to

relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2)).

## 1.    Foreclosure By Advertisement

Plaintiff seeks a declaratory judgment that Trimark's October 7, 2008 assignment of the

mortgage loan to U.S. Bank as trustee for SABR was defective and renders the foreclosure on

her home null and void (Count II).  Plaintiff claims because U.S. Bank is not the holder of the

underlying debt instrument, it lacked the authority to foreclose.  Plaintiff explains that the

November 2005 documents indicate that Trimark assigned its "right and interest in the subject

note to the bearer" and its "right and interest in the subject mortgage" to New Century Mortgage

Corporation ("New Century").  Pl.'s Resp. to Defs.' Mot. for Summ. J. [Docket No. 51] at 2.  In

light of this unrecorded transaction, Plaintiff claims Trimark "was not seized of the requisite

title" to the subject property and to the subject security interest to convey and assign the incident

security interest to U.S. Bank on October 7, 2008.  Am. Compl. ¶¶ 92, 94-95.  Therefore, "the

October 7, 2008 assignment of mortgage from Trimark to U.S. Bank . . . is bogus because

Trimark had already assigned the mortgage on November 25, 2005 [to New Century] and negotiated the Note on November 18, 2005." Pl.'s Resp. to Defs.' Mot. for Summ. J. at 29-30. Plaintiff clarifies that her claim is not that U.S. Bank lacked the *power* to foreclose due to an unrecorded assignment of the note, an argument foreclosed by the Minnesota Supreme Court's decision in <u>Jackson v. Mortgage Elec. Registration Sys.</u>, 770 N.W.2d 487 (Minn. 2009); rather, her claim is that the assignment from Trimark to U.S. Bank was invalid, meaning that U.S. Bank was not the holder of the underlying note and did not have the *right* to enforce the security interest through foreclosure.

Plaintiff's argument that U.S. Bank "was not seized with the requisite title or security interest to bring a foreclosure" due to the alleged prior, unrecorded assignment to New Century implicates the Minnesota Recording Act, which provides that "[e]very conveyance of real estate . . . [that is not] recorded shall be void . . . as against any attachment levied thereon . . . of record prior to the recording of such conveyance." <u>Mavco, Inc. v. Eggink</u>, 739 N.W.2d 148, 157-58 (Minn. 2007) (quoting Minn.Stat. § 507.34). The Recording Act allows for a subsequent purchaser in good faith who records title first to obtain rights to the property as against any prior purchaser who fails to record his interest. <u>Miller v. Hennen</u>, 438 N.W.2d 366, 369 (Minn. 1989). A purchaser in good faith is one who gives valuable consideration without actual, implied, or constructive notice of inconsistent outstanding rights of others. <u>Anderson v. Graham Investment Co.</u>, 263 N.W.2d 382, 384 (Minn.1978).

Under Minnesota law, an assignment of a real estate mortgage is a conveyance within the meaning of the Recording Act. <u>Huitink v. Thompson</u>, 104 N.W. 237, 237 (Minn. 1905). Thus, "[i]t is the rule in this state that an assignment of a real estate mortgage is a conveyance, . . . and, if not recorded, is void, if without notice to third persons, who deal with the mortgage." <u>Foss v. Dullam</u>, 126 N.W. 820, 821 (Minn. 1910); <u>Fed. Land Bank of St. Paul v. Smaagaard</u>, 256 N.W.

102, 104 (Minn. 1934) ("Assignments of real estate mortgages must be recorded to constitute

notice . . . ."). Plaintiff's attempt to distinguish between the power and the right to foreclose is

rejected on the rationale of Huitink:

> It is true that, to authorize the foreclosure of a real estate mortgage,
> the person foreclosing the same must be the legal owner of the
> instrument; the ownership and the right to foreclose must concur in
> the party foreclosing. But that rule can have no application to this
> case. Plaintiff, by his failure to record his assignment, clothed [the
> mortgagee of record] with the indicia of title to the mortgage and the
> apparent right to foreclose the same, and cannot now be heard to
> assert his rights as against innocent third parties, who acted upon
> facts disclosed by the record as permitted to exist by plaintiff, and in
> entire good faith. The rule that only the legal owner of a mortgage
> can foreclose it is but the application of the general principle that the
> legal title to property can be conveyed and transferred only by the
> true owner. But if the owner of the fee fails to record the evidence of
> his title, and the immediately preceding owner, whose title is of
> record, conveys the same, the recording act will protect the title so
> transferred, the grantee being a purchaser in good faith for a valuable
> consideration.

104 N.W. at 239.

There is no dispute that the alleged assignment to New Century in 2005 was not

recorded. Am. Compl. ¶ 92. Under the Minnesota Recording Act, therefore, that unrecorded

assignment would not call into question the rights U.S. Bank obtained through the recorded

assignment in 2008 from Trimark so long as U.S. Bank did not have notice of the prior

assignment. Because it is undisputed that the assignment to New Century was not recorded,

there is no basis for finding U.S. Bank to have constructive notice of the assignment. And

nothing in the Amended Complaint or any of the documents attached thereto remotely suggest

that U.S. Bank had actual or implied notice of the assignment. Therefore, the assignment to U.S.

Bank, which was recorded, is valid as against the alleged prior, unrecorded assignment to New

Century.

Plaintiff attempts to buttress her challenge to whether the record adequately shows that

U.S. Bank is the holder of the underlying debt instrument by claiming that "the chain of endorsement" of the note and mortgage did not conform to the chain of endorsement specified in the PSA. Am. Compl. ¶¶ 30-47. Plaintiff explains that the failure to comply with the PSA is evidence that "tends to make the existence of the fact of the assignment from Trimark to U.S. Bank as trustee less probably (sic) than it would be without the evidence." Pl.'s Resp. to Defs.' Mot. for Summ. J. at 27. The Court disagrees. Whether the assignment to U.S. Bank followed the chain dictated in the PSA is not probative of the validity of U.S. Bank's interest under the Minnesota Recording Act. If U.S. Bank had been assigned the mortgage from a party other than the mortgagee of record, noncompliance with the PSA might be relevant, but the undisputed evidence is that Trimark was the mortgagee of record when it assigned to U.S. Bank.

Plaintiff also argues that the Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage recorded in the Hennepin County Recorder's Office fails to comply with Minnesota law. The notice was signed by an employee of Wells Fargo who declared that Wells Fargo was the attorney in fact for U.S. Bank, and it empowered Reiter & Schiller to conduct the foreclosure. Plaintiff contends that the notice is deficient because "there are not any documents recorded against the subject property tract that are executed by a principal of U.S. Bank that give power of attorney to Wells Fargo Bank for purposes of a foreclosure of mortgage." Am. Compl. ¶ 54. Counsel for Plaintiff recently made a similar argument to the Minnesota Court of Appeals, which, after considering the arguments and the legislative history of the relevant statutory provision, Minn. Stat. § 580.05, concluded that the legislature "did not intend to require that a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement be recorded in the tract index. Molde v. CitiMortgage, Inc., ___ N.W.2d ___, 2010 WL 1439694, at *3-7 (Minn. Ct. App. April 13, 2010). The well-reasoned analysis by the court of appeals in Molde convinces this Court to conclude that, in the absence of any authority

by the Minnesota Supreme Court, it is the best evidence of Minnesota law.  See Hope v. Klabal,

457 F.3d 784, 790 (8th Cir. 2006) (holding that federal courts applying Minnesota law are bound

by the Minnesota Supreme Court, "and if that court has not considered an issue, . . . must follow

decisions of the Minnesota Court of Appeals if they are the best evidence of Minnesota law").

The Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage  was

recorded with the Hennepin County Recorder's Office, and it demonstrates that Wells Fargo had

been designated the attorney in fact for U.S. Bank and that Reiter & Schiller were employed and

empowered to conduct the foreclosure.

Plaintiff next argues that the foreclosure contravenes Minnesota law because U.S. Bank

failed to serve her, the individual in possession of the mortgaged premises, with the notice of

postponement of the mortgage foreclosure sale "personally or . . . 'in like manner as a summons

in a civil action.'" Am. Compl. ¶ 106-07 (quoting Minn. Stat. § 580.03).  However, the notice of

postponement that must be given to the person in possession of the mortgaged premises is

governed by a different section, Minn. Stat. § 580.07, subd. 1, which requires that a notice of

postponement be sent to the person occupying the mortgaged premises by first class mail.  There

is no dispute that the notice of postponement was mailed to Plaintiff.

Plaintiff's next argument is that the foreclosure was invalid because even though U.S.

Bank knew she was represented by an attorney, U.S. Bank did not send a copy of the notice of

postponement to her attorney.  See Am. Compl. ¶ 70.  Section 580.07, subd. 1, requires that the

notice be (1) published in the newspaper in which the original notice of sale was published and

(2) sent by first class mail to the person occupying the mortgaged premises.  Plaintiff cites no

authority, and the Court is aware of none in the context of the mortgage foreclosure statutes at

issue in this litigation where sending a copy of a notice of postponement of a mortgage

foreclosure to the borrower's attorney is required.[7]

Plaintiff has failed to state a claim for a declaratory judgment that the foreclosure of her home is null and void for contravening Minnesota law, and, therefore, Count II is dismissed.

## 2.     Fraudulent/Negligent Misrepresentation[8]

Plaintiff alleges that by executing the mortgage assignment to U.S. Bank, Trimark "represented that it was the proper party" to grant such an assignment.  Pl.'s Resp. to Defs.' Mot. for Summ. J. at 31.  According to Plaintiff, Trimark's representation was false because it had previously assigned the mortgage and note to New Century Mortgage Corporation and, thus, did not have the right to assign the mortgage and note to U.S. Bank.  Plaintiff reasons that the Banks, "as the parties that recorded this bogus mortgage are also complicit in the misrepresentations that underlie it."  Id. at 32.  Plaintiff contends that these allegations form a cognizable basis for claims of fraudulent and negligent misrepresentation.[9]

To prove fraudulent misrepresentation, a plaintiff must show:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own

---

[7] There are other statutory provisions that impose such a duty.  For example, under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, if a debt collector has actual knowledge that a debtor is represented by an attorney, a communication made in connection with the collection of a debt must be sent to the debtor's attorney.  See Schmitt v. FMA Alliance, 398 F.3d 995, 996-98 (8th Cir. 2005) (construing 15 U.S.C. § 1692c(a)(2)).  The FDCPA, however, is not at issue in this litigation.

[8] The claim for fraudulent misrepresentation and the claim for negligent misrepresentation are both entitled "Count III" in the Amended Complaint.  The Court will refer to the fraudulent misrepresentation claim as Count III(a) and the negligent misrepresentation claims as Count III(b).

[9] Plaintiff cites no Minnesota authority in support of her position that common law claims of fraudulent and negligent misrepresentation can be properly predicated on allegations that a defendant caused the recording of an assignment alleged to contain false statements.  To the extent that a claim can be based on such allegations, it seems more properly characterized as a slander of title claim.

> knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.

Hoyt Props., Inc. v. Prod. Res. Group, L.L.C., 736 N.W.2d 313, 318 (Minn. 2007). The elements of negligent misrepresentation are (1) a duty of reasonable care in conveying information; (2) breach of that duty by negligently giving false information; (3) reasonable reliance on the misrepresentations, which proximately caused the injury; and (4) damages. Smith v. Brutger Cos., 569 N.W.2d 408, 413 (Minn.1997).

Federal Rules of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b)'s pleading requirements apply to claims alleging misrepresentations, whether styled as intentional misrepresentations or negligent misrepresentations. See McGregor v. Uponor, Civil No. 09-1136, 2010 WL 55985, at *3 (D. Minn. Jan. 4, 2010). To satisfy Rule 9(b)'s pleading requirement, "the complaint must identify the who, what, where, when, and how of the alleged fraud." United States v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (quotation omitted).

The Court concludes that Plaintiff has failed to state a claim for fraudulent or negligent misrepresentation. Plaintiff alleges (1) that the Banks knew or should have known that the assignment from Trimark did not convey the requisite title and incident security interest to provide authority to initiate a foreclosure by advertisement and (2) that the Banks did not exercise reasonable care in assuring that Trimark could convey the requisite title and incident security interest before recording the assignment. Plaintiff's Amended Complaint simply provides "labels and conclusions, and a formulaic recitation," Twombly, 550 U.S. at 555, of the

elements of fraudulent misrepresentation and negligent misrepresentation and, thus, does not meet the particularity requirements of Rule 9(b). See Sinishtag v. Chase Home Fin., LLC, No. 09-CV-12665, 2009 WL 4950464, at *6-7 (E.D. Mich. Dec. 15, 2009) (dismissing similar thread-bare allegations of fraudulent misrepresentation and negligent misrepresentation based on conduct also alleged to constitute wrongful foreclosure and violations of TILA). Accordingly, the Court grants the Banks' motions to dismiss the claims for fraudulent and negligent misrepresentation.

### 3. Consumer Fraud

Count IV of the Amended Complaint asserts a claim for violations of the MPCFA. The MPCFA prohibits "[t]he act, use, or employment . . . of any fraud, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn.Stat. § 325F.69, subd. 1. Typically, the state attorney general enforces the MPCFA. Minn.Stat. § 325F.70, subd. 1. However, the Minnesota Private Attorney General Act confers a private right of action on "any person injured by a violation of" the MPCFA. Minn.Stat. § 8.31, subds. 1, 3a. When a plaintiff seeks damages for a violation of the MPCFA under § 8.31, she must demonstrate that (1) the defendant made a false or misleading statement, (2) the false or misleading statement caused damage to the plaintiff, and (3) the plaintiff seeks to secure a public benefit. Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 11, 13 (Minn.2001); see also Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000) (holding that a successful prosecution of a consumer's claim that he was defrauded in a single one-on-one transaction "does not advance state interests and enforcement has no public benefit").

The Banks argue that Plaintiff seeks redress for private harm and that her action, if

successful, benefits only her and not the public as a whole. Plaintiff responds that the issue of whether her action seeks to secure a "public benefit" is a question of fact for the factfinder. In addition, although she concedes that she was involved in a one-on-one transaction, she argues that she is unfairly burdened by the Minnesota Supreme Court's definition of "public benefit" in Ly and that there is a public benefit in preventing the abuse of the foreclosure by advertisement process and wrongful foreclosure. Counsel for Plaintiff has presented these arguments previously in an attempt to show the validity of claims for fraudulent misrepresentation, negligent misrepresentation, and violations of Minn.Stat. § 325F.69, in connection with a challenge to the chain of title proffered by an assignee who foreclosed on a mortgage after acquiring the interest in the mortgage through a PSA. In Bartol v. ACC Capital Holding Corp., United States District Judge Donovan W. Frank, held:

> [T]he issue of whether the matter is in the public interest is a question of law, not a question of fact as Plaintiff contends. In Ly, the Minnesota Supreme Court held that the successful prosecution of claimant's fraud claim, which involved a "single one-on-one transaction," would not benefit the public. . . . Under Ly, which sets forth the prevailing legal standard, [the MPCFA] claim fails, as it similarly involves a one-on-one transaction. The Court further finds that the benefit of generally preventing foreclosure abuse is too remote to satisfy the "public benefit" requirement. Because the alleged misrepresentations were made in a one-on-one transaction and because [the plaintiff] has not demonstrated that the prosecution of this claim would benefit the public, the Court grants [the defendant's] motion to dismiss [the MPCFA] claim.

Civil No. 09-2718, 2010 WL 156448, at *6 (D. Minn. Jan. 11, 2010). This Court adopts Judge Frank's analysis.[10] Plaintiff's MPCFA claim is dismissed.

### 4. Deceptive Trade Practices

---

[10] The conclusion that deciding whether an action would benefit the public presents a question of law, not a question of fact, is also consistent this Court's treatment of MPCFA claims. See Mooney v. Allianz Life Ins. Co. of N. Am., Civil No. 06-545, 2009 WL 511572, at *3 (D. Minn. Feb. 26, 2009).

Lastly, Plaintiff asserts a claim for violations of the MDTPA (Count V). Plaintiff alleges that "[b]y executing the assignment of mortgage, . . . Trimark represented that it was the proper party to execute the October 7, 2008 mortgage assignment to U.S. Bank, and U.S. Bank and[] its purported attorney in fact, Wells Fargo[,] represented that [t]hey were the proper parties to receive the mortgage assignment." Pl.'s Resp. to Defs.' Mot. for Summ. J. at 31. However, Plaintiff contends, these representations were "not in accord with the facts," and, as such, constitute misrepresentations and misleading or deceptive practices, in violation of Minn. Stat. § 325D.44, subd. 1(13). Id. at 43.

This Court recently encountered a similar invitation to hold that a claim under the MDTPA can be based on actions leading up to a mortgage foreclosure that allegedly caused the homeowner to be confused about an aspect of the foreclosure process. See Cohen v. Mortgage Elec. Registration Sys., Civil No. 08-1394, 2009 WL 4578308, at *3-4 (D. Minn. Dec. 1, 2009). In that case, the Court concluded that the complained of conduct did not cause the plaintiff to experience the type of confusion or misunderstanding that falls within the purview of the MDTPA. Id. at *3-4.

> [I]t is clear that confusion within the statute's ambit is the mistaking of the identity of a product, or one of a product's essential aspects, for that of another product. Indeed, the majority of the enumerated examples refer to confusion, deception, or misunderstanding regarding the source, sponsorship, approval, certification, affiliation, connection, association, designation of geographic origin, ingredients, uses, benefits, number of sponsors, newness, status, quality, standard, grade, style, or model of goods or services. Minn. Stat. § 325D.44, subd. 1(1)-(7). The remaining examples refer to disparaging the goods or services of another, advertising goods or services with no intent to sell them as advertised or no intent to supply reasonably expectable public demand, making misleading statements concerning price reductions, and implying or suggesting while attempting to collect a delinquent account that a consumer's health care services will be withheld. Id., subd. 1(8)-(12). Thus, the language, "any other conduct which similarly creates a likelihood of confusion or misunderstanding," indicates that subd. 1(13) addresses the same type of confusion, misunderstanding, or deception

> addressed in the other 12 enumerated examples and does not contemplate entirely different types of confusion, misunderstanding, or deception.

Id. (quotation omitted) (footnote omitted).  For the same reasons explained in Cohen, the Court rejects Plaintiff's argument that the alleged misrepresentations and misleading statements made in connection with the recording of the mortgage assignment are actionable under the MDTPA. Accordingly, dismissal of Plaintiff's MDTPA is warranted.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion for Summary Judgment on Count I [Docket No. 38] is **DENIED**;

2.    The Banks' Motion for Summary Judgment on Count I and Motion to Dismiss Counts II through V [Docket No. 33] is **GRANTED**; and

3.    Counts II, III(a), III(b), IV, and V of the Amended Complaint [Docket No. 31] are **DISMISSED**.

BY THE COURT:


 s/Ann D. Montgomery 
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  May 4, 2010.